Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Thursday, January 24, 2008 9:53:07 AM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:                                  )
                                        )
GEORGINA M. WATERS                      )   Case No. 07-459
                                        )
        Debtor.                         )   Chapter 13

**MEMORANDUM OPINION**

The Chapter 13 trustee (the "Trustee") objects to the confirmation of the Chapter 13 plan proposed by Georgina M. Waters (the "Debtor") on the basis that the plan fails to commit all the Debtor's disposable income to the plan. More specifically, the Trustee argues that the Debtor has intentionally excluded VA benefits in the amount of $1,572 per month from Schedules I on the basis that the benefit is exempt under both federal and West Virginia law. The Debtor argues that exempt assets should not be included when calculating her monthly income, and that her disposable income is properly limited to that stated on Form B22C, which implements the disposable income test of 11 U.S.C. § 1325(b).

For the reasons stated herein, the court finds that exempt, monthly VA benefits are to be included in the calculation of the Debtor's disposable income, but the court will overrule the Trustee's objection to the Debtor's Chapter 13 plan because the Debtor has already included the receipt of her monthly VA benefits in the calculation of her disposable income on Form B22C.

**I. BACKGROUND**

When the Debtor filed her April 10, 2007 Chapter 13 bankruptcy petition, she stated on Schedule I that she was employed as a registered nurse earning a net monthly pay of $3,873. In addition to her wages, the Debtor stated that she received $1,572 a month in VA benefits, which the Debtor claims are

1

exempt under 38 U.S.C. § 5301 and W. Va. Code § 38-10-4(j)(2).[1] Combining the Debtor's wages and VA benefits, the Debtor has $5,445 per month in income. According to Schedule J, the Debtor has $4,443 in monthly expenses, leaving at least $1,002 with which the Debtor could pay her creditors in a Chapter 13 plan.

Shortly before filing her Chapter 13 petition, the Debtor suffered medical problems that resulted in a loss of income and time off work. In 2007, the Debtor did not begin working until March 18, 2007 – about one month before filing her bankruptcy petition. Accordingly, when the Debtor completed Form B22C, which assists in the calculation of a debtor's "current monthly income," her stated monthly income was only $2,631. This lower number is on account of the fact that the term "current monthly income" is defined by 11 U.S.C. § 101(10A) to include a six month historical average. The $2,631 reported by the Debtor included both her monthly VA benefits, and her last six months of wages.

On July 27, 2007, the Debtor filed an amended Schedule I on which she redacted the monthly receipt of VA benefits as a source of income on the grounds that those benefits were exempt from the claims of her creditors. In addition, the Debtor claimed to have worked fewer hours resulting in a reduction of her net pay to $3,220. With her expenses remaining at $4,443, the Debtor claims to have a negative budget. In response to the Debtor's amendment of Schedule I, the Trustee filed her objection to the Debtor's proposed Chapter 13 plan, which only proposes to pay $555 per month to her creditors over the next sixty months. The plan proposed by the Debtor is sufficient to repay about 25% of the unsecured claims against her bankruptcy estate.

## II. DISCUSSION

The purpose of the disposable income test of 11 U.S.C. § 1325(b) is to determine, on objection, what amount of income a debtor must devote to the repayment of the debtor's creditors in a Chapter 13 plan to obtain confirmation of that plan. In making her disposable income objection under § 1325(b), the Trustee contends that the Debtor should include her monthly receipt of VA benefits on Schedule I, and that, by reducing the Debtor's expenses on Schedule J to what to what the Trustee believes is reasonable and necessary for the maintenance and support of the Debtor, the return to unsecured creditors can be greater

---

[1] No objection has been made with regard to the exempt status of the Debtor's VA benefits.

2

than the 25% distribution currently proposed by the Debtor.

The Debtor responds that: (A) the Trustee cannot force her to pay over exempt benefits to her creditors in a Chapter 13 plan, and (B) the Debtor's disposable income that she must commit to repayment of unsecured creditors in a Chapter 13 plan is properly determined by Form B22C, which already includes the receipt of her monthly VA benefits.

### A.    Exempt Assets and § 1325(b)'s Determination of Disposable Income

The Debtor contends that the purpose of claiming an exemption in property is to shield that property from the reach of her creditors. If she is required to pay over the proceeds of her monthly entitlement to exempt VA benefits, the Debtor argues, then the purpose of both the federal and State exemption statutes have been defeated.

Several courts have agreed with the Debtor's position regarding exempt assets and the calculation of a debtor's disposable income. *E.g.*, *Berger v. Pokela (In re Berger)*, 61 F.3d 624 (8th Cir. 1995) (holding in a Chapter 12 case that disposable income did not include exempt life insurance proceeds); *In re Ferretti*, 203 B.R. 796, 800 (Bankr. S.D. Fla. 1996) ("The clear language of [§ 522(c)] protects exempt property, regardless of form, from prepetition debts . . . . This express limitation cannot be ignored for purposes of defining disposable income under § 1325(b)."); *Huisinga v. Koch (In re Koch)*, 187 B.R. 664, 667-89 (D.S.D. 1995) (holding that income exempt under state law could not be included in a Chapter 13 disposable income calculation, and noting that different panels of the Eighth Circuit may have different points of view on the issue), *rev'd sub nom. Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997); *In re Tomasso*, 98 B.R. 513, 515 (Bankr. S.D. Cal. 1989) (stating that only the nonexemptable portion of a personal injury settlement would constitute disposable income).

These courts find support in the plain language of § 522(c), which provides: "[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose . . . before the commencement of the case . . . ." Therefore, including "exempt property within the parameters of 11 U.S.C. § 1325(b)(2) directly conflicts with § 522(c)." *Ferretti*, 203 B.R. at 800.

In contrast, other courts have determined that § 1325(b)(1)(B) encompasses exempt assets in calculating "disposable income," meaning that the debtor is forced to pay over the proceeds of an otherwise exempt asset to creditors notwithstanding the fact that the debtor has proposed an otherwise confirmable

3

plan. *E.g.*, *Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997) ("Chapter 13 contains no language suggesting that exempt post-petition revenues are not Chapter 13 'income,' and § 1325(b)(2) expressly defines 'disposable income' to mean income not needed for debtor's support. . . . . In a Chapter 13 proceeding . . . [the] debtor repays unsecured creditors primarily with post-petition 'disposable income . . . . Debtor's fresh start is not endangered by a requirement that income received during the life of the plan from otherwise exempt sources be included in the calculation of disposable income."); *Freeman v. Schulman (In re Freeman)*, 86 F.3d 478, 481 (6th Cir. 1996) ("[I]ncome that would be otherwise exempt under Tennessee law can still be 'disposable income' for purposes of Chapter 13."); *In re Hagel*, 184 B.R 793 (B.A.P. 9th Cir. 1995) (holding that exempt social security disability benefits are included under a § 1325(b) analysis); *In re Minor*, 177 B.R. 576, 579 (E.D. Tenn. 1995) (holding that workers' compensation benefits are included as disposable income even though exempt under state law); *In re Tolliver*, 257 B.R. 98, 100 (Bankr. M.D. Fla. 2000) ("[B]ecause the fresh start in Chapter 13 is protected by a debtor's ability to retain non-disposable income rather than exempt assets, the importance of exemptions is diminished . . . ."); *Gaertner v. Claude (In re Claude)*, 206 B.B. 374, (Bankr. W.D. Pa. 1997) ("§ 1325(b) does not qualify income with reference to its exempt status."); *In re Jackson*, 173 B.R. 168, 170-71 (Bankr. E.D. Mo. 1994) (same); *Watters v. McRoberts*, 167 B.R. 146, 147 (S.D. Ill. 1994) (same); *In re Schnabel*, 153 B.R. 809, 817-18 (Bankr. N.D. Ill. 1993) ("[To allow a debtor] to use his exempt income to attain Chapter 13's broad discharge, without the corollary requirement to use it to pay creditors as much as he is able, would contravene the express purpose of the statute - namely, that the debtor make payments under a plan.").

Rather than relying on the plain language of § 522(c), these courts rely on the plain language of § 1325(b), which, before the amendments made to the statute by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, provided: "'disposable income' means income which is received by the debtor and which is not reasonable necessary to be expended – (A) for the maintenance and support of the debtor . . . ." 11 U.S.C. § 1325(b)(2) (2004). Because this language is "without an express or even implicit limitation" regarding the exempt status of income these courts refuse to impose one. *Shanabel*, 153 B.R. at 816. After all, the significance of exemptions is diminished in Chapter 13 where a debtor may retain all of his or her assets regardless of exempt status, and "where the

4

fresh start is protected by the debtor's retention of non-disposable income rather than by exempt assets." *Id.* at 817.

In *Solomon v. Cosby (In re Solomon)*, 67 F.3d 1128, 1132, (4th Cir. 1995), the Court of Appeals for the Fourth Circuit addressed whether a Chapter 13 debtor's entitlement to receive hypothetical IRA distributions constituted disposable income under the disposable income test of § 1325(b). The Court concluded that a hypothetical IRA withdraw was not "income" within the meaning of § 1325(b) because that section only contemplates "income that a debtor is actually receiving at the time of confirmation," and the debtor was not currently receiving any distributions from the IRA. *Id.* at 11132. In addition, the Fourth Circuit noted that the debtor had no intention of withdrawing funds from the IRA during the life of the plan; the terms of the IRA did not require any distributions until the debtor reached the age of 70½; the IRA was exempt from the reach of creditors under applicable state law; and protecting the IRA from the reach of the debtor's Chapter 13 creditors gave effect to the purpose of retirement plans by ensuring that workers have sufficient funds to support themselves during their retirement years. *Id.* at 11132-33. Importantly, the Fourth Circuit distinguished cases where a debtor was currently receiving distributions from an exempt pension and/or social security benefit, noting that in those cases the debtor was receiving "income" as of the time of confirmation. *Id.* at 1132 (citing *In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993); *In re Hagel*, 171 B.R. 686 (Bankr. D. Mont. 1994), *aff'd*, 184 B.R. 793 (B.A.P. 9th Cir. 1995)). The Fourth Circuit did not deny the relief sought by the debtor's creditors on the basis that the IRA was an exempt asset under applicable State law, and did not evidence any disagreement with the results of the cited cases of *Schnabel* or *Hagel*.

With the enactment of BAPCPA in 2005, the split of authority over whether or not exempt assets are to be included in the calculation of disposable income has been statutorily answered by Congress. Section 1325(b) now provides:

> (2) For purposes of this subsection, the term "disposable income" means current monthly income received by the debtor . . . less amounts reasonably necessary to be expended–
>     (A)    (i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed . . . .

5

11 U.S.C. § 1325(b)(2).

With regard to a calculation of a debtor's income, the term "disposable income," as it is used in § 1325(b)(2) means "*current monthly income* received by the debtor . . . ." (emphasis added). The term "current monthly income" is itself defined by statute:

> (10A) The term "current monthly income"--
> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income . . .
>
> . . .
>
> and
> (B) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent), but excludes benefits received under the Social Security Act, payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and payments to victims of international terrorism (as defined in section 2331 of title 18) or domestic terrorism (as defined in section 2331 of title 18) on account of their status as victims of such terrorism.

11 U.S.C. § 101(10)(A-B).

Accordingly, under the changes rendered to § 1325(b) by BAPCPA, the debtor's "current monthly income" for purposes of applying the disposable income test now includes any amount paid by an entity other than the debtor on a regular basis for the household expenses of the debtor. Under this statutory language, the only exceptions are assets that are: (1) not "income" to the debtor; (2) not paid by an "entity" (which is defined in § 101(15) as a person, estate, trust, governmental unit or the United States trustee); (3) not received on a regular basis; (4) not received for the household expenses of the debtor or the debtor's dependents; (5) Social Security Act payments; (6) payments to victims of war crimes or crimes against humanity on account of their status as victims of such crimes, and (7) payments to victims of international terrorism or domestic terrorism on account of their status as victims of such terrorism.

In general, "[v]eterans' disability benefits compensate for impaired earning capacity, and are intended to 'provide reasonable and adequate compensation for disabled veterans and their families.'" *Rose v. Rose*, 481 U.S. 619, 630 (1987). Two important types of VA benefits exist: disability

6

compensation payments and pension benefits. "Disability compensation payments are paid to veterans who are disabled by injury, illness, or disease incurred or aggravated while on active duty. Pension benefits are paid to veterans with low incomes and low net worth who are disabled for reasons that do not relate to their military service." Cpt. Gerald A. Williams, *A Primer on Veterans' Benefits for Legal Assistance Attorneys*, 47 A.F. L. Rev. 163, 163 (1999). The purpose of the federal exemption for VA benefits in 38 U.S.C. § 5301 is to "protect funds granted by the Congress for the maintenance and support of the beneficiaries thereof." *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 162 (1962).

Regarding the application of 11 U.S.C. § 101(10A) to the receipt of VA benefits, those benefits are "income" to the Debtor inasmuch as she receives a monthly benefit check. Likewise, the benefits are paid by the Department of Veterans Affairs, which is an "entity" as defined in 11 U.S.C. § 101(15). The benefits are received on a regular, monthly basis, and based on the purpose served by VA benefit payments, they are received to help pay for the household expenses of the debtor and/or the debtor's dependents. Accordingly, exempt VA benefits are properly included in the calculation of a debtor's current monthly income pursuant to § 101(10A), and, therefore, are to be included when calculating the extent to which the Debtor has disposable income to fund a Chapter 13 plan – regardless of the exempt status of those benefits under federal or State law. No enumerated exception exists to exclude such benefits in § 101(10A). *See also* Form B22C, Lines 2-9.

**B.      Determining Income for Purposes of § 1325(b)**

The Trustee argues that the Debtor's income is properly determined by focusing on Schedule I, and then deducting the expenses listed on Schedule J (after some old-fashioned "belt-tightening"), to determine the extent to which the Debtor has monthly disposable income available to devote to her Chapter 13 plan. The Debtor, however, asserts that the calculation of her income is to be determined by the statutory formula set forth in § 1325(b)(2), as implemented by Form B22C. Under the statutory formula, the Debtor's "current monthly income" (a six-month historical average) is determined and, because the Debtor claims income under the State's median, her disposable income is calculated by deducting her Schedule J expenses from her "current monthly income."

In a similar case, *In re Simms*, No. 06-1206 (Bankr. N.D.W. Va. Jan 24, 2007), the court addressed at length the reasons why B22C was the appropriate benchmark for determining a debtor's

7

income side of the equation in the disposable income calculation. The court stated:

> Concluding, as this court has, that (1) the word "projected" is best understood to modify "disposable income," as defined in §§ 1325(b)(2) and 101(10)(A); (2) the method for projecting disposable income over the life of a debtor's plan is to be accomplished by multiplying the determination of disposable income by the number of months in the plan; (3) the clear Congressional trend is to take away discretion from bankruptcy courts in making determinations as to disposable income, and (4) that, quite simply, the result is compelled by the plain language of § 1325(b), the court holds that Form B22C is the proper method for determining the Debtor's disposable income following a § 1325(b) objection, and that Schedules I & J may not be used for this purpose.

*Simms*, slip op. at 18.

In that case, the court also rejected the interpretation of 11 U.S.C. § 1325(b)(2) as advanced by the United States Trustee ("USTE") under which the debtor's historical income, as defined by § 101(10A), was merely a starting point for adjusting the number up or down by taking into account the debtor's circumstances as of the petition date, and/or foreseeable changes in the debtor's income during the applicable commitment period:

> Under the USTE's approach, "the debtor's historical income and means testing expense amounts are a starting point, and should be carried forward throughout the term of the plan, absent evidence to the contrary." *E.g.*, *Kibbe v. Sumski (In re Kibbe)*, 361 B.R. 302, 314-15 (B.A.P. 1st Cir. 2007) ("The calculation of disposable income according to Form B22C can not be determinative of the debtor's 'projected disposable income' because it does not take into account the debtor's circumstances as of the petition date or foreseeable changes in circumstances in income during the plan commitment period."); *In re Slusher*, 359 B.R. 290, 293 (Bankr. D. Nev. 2007) ("[T]his court holds that line 58 of Form B22C is a presumptive, but not an exclusive, basis for calculating 'projected disposable income'. . . ."); *In re Risher*, 344 B.R. 833, 836-37 (Bankr. W.D. Ky. 2006) ("The numbers resulting from the calculations on Form B22C represent a starting point for the Court's inquiry. . . . Such a construction gives the Court the ability to evaluate the debtor's past and current financial status to determine a debtor's disposable income when a debtor's circumstances change from the six months preceding the filing of the petition.").
>
> . . . . The term "projected," the USTE asserts, is forward looking, and the trustee, creditors, and the debtor must have an opportunity to offer rebutting evidence as to changed circumstances or else the interpretation of "projected disposable income" may degenerate into absurdity should the court require the parties to strictly adhere to Form B22C.

8

> In this case, however, the Debtor's income stream has not unduly varied over the six months before the filing of the petition. Thus, the court does not need to reach the merits of the USTE's argument in this case regarding a calculation of the Debtor's future income because the Debtor has not experienced, and is not anticipated to experience, any significant, future income changes that would require a deviation from that stated in Form B22C. *E.g.*, *In re Lanning*, No. 07-067, 2007 Bankr. LEXIS 4107 at *20 (B.A.P. 10th Cir. Dec. 13, 2007) (holding that the mathematical determination of disposable income in § 1325(b) is a starting point only when the debtor can prove a substantial change in circumstance justifying a deviation from the formula; a "deviation from the Form B22C determination of disposable income will be the exception rather than the rule.").

*Simms*, No. 06-1206 at p. ___.

In this case, the Debtor experienced a significant change in circumstances shortly before filing her April 10, 2007 bankruptcy petition – she obtained employment about one month before filing. Thus, of the two factual scenarios left undecided in *Simms* (debtors that experience either an increase or decrease in income shortly before filing) one of them is squarely presented to the court in this case. Namely, the court must determine if any basis exists to depart from the income determination on Form B22C when a debtor experiences a significant increase in income shortly before filing bankruptcy.[2]

As explained in *Simms*, this court found no reason to give an interpretation of "*projected* disposable income" that enervated the implementation of the new disposable income formula in § 1325(b)(2) such that the court could resort to the pre-BAPCPA practice of examining Schedules I & J for a determination of how much income a debtor must contribute to a Chapter 13 plan to achieve confirmation. Part of the court's reasoning in *Simms* was that the phrase "projected disposable income" was not new, and prior to BAPCPA, the Fourth Circuit, and others, instructed: "'[r]ather than engaging in hopeless speculation about the future,' a court should determine projected disposable income by

---

[2] E.g., Eugene R. Wedoff, *Means Testing in New 707(b)*, 79 Am. Bankr. L.J. 231, 249-50 (2005) ("The potential arbitrariness of six-month averaging could be even more pronounced in the case of debtors whose permanent employment changes around the time of their bankruptcy. If the debtor has had a relatively high-paying job and files a bankruptcy case shortly after taking a less remunerative position, the debtor's CMI – reflecting the lost income of the prior job – will exaggerate what the debtor actually has available to pay debts. Conversely, a debtor who takes a good job after a period of unemployment can show a CMI well below what the debtor is actually earning.").

9

calculating a debtor's 'present monthly income and expenditures' and extending those amounts over the life of the plan." *Solomon*, 67 F.3d at 1132 (citation omitted). As pointed out by the Bankruptcy Appellate Panel for the Tenth Circuit Court of Appeals, however, pre-BAPCPA bankruptcy courts sometimes deviated from this formula where there were known changes in the debtor's circumstances:

> Prior to the amendment of section 1325, Schedules I and J were the main reference points for determining debtors' projected disposable income. However, if the bankruptcy court had reason to believe that those schedules did not accurately predict a debtor's actual ability to pay, other evidence was also considered. As such, pre-BAPCPA, projected disposable income was not determined solely by a mathematical formula. Although the amendments to section 1325 specify the formula by which to determine a debtor's median standing, as well as the monthly disposable income as of the date of the petition, they give us no reason to believe that Congress intended to eliminate the bankruptcy courts' discretion to deviate from an application of that formula where significant circumstances support doing so.

*In re Lanning*, No. 07-67, 2007 Bankr. LEXIS 4107 at *17-18 (B.A.P. 10th Cir. Dec. 13, 2007).

This court respectfully disagrees with *Lanning's* reasoning that the amendments to § 1325 give no reason to believe that Congress intended to eliminate the bankruptcy court's discretion to deviate from the application of the formula when significant circumstances support doing so. The changes wrought by BAPCPA to the disposable income test of § 1325(b) are not stylistic whereby prior practice may still be resorted to in the manner advocated by *Lanning* – the changes are substantive and extensive. The following additions and deletions were made by Congress:

> (b)   (1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> . . .
>
>    (B) the plan provides that all the debtor's projected disposable income to be received in the ~~three-year~~ applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
>
>    (2) For purposes of this subsection, the term "disposable income" means current monthly income ~~which is~~ received by the debtor . . . less amounts ~~and which is not~~ reasonably necessary to be expended–
>
>       (A)   (i) for the maintenance or support of the debtor or a dependent of the debtor . . .
>
> . . . .

10

> (3) Amounts reasonably necessary to be expended under paragraph (2) shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2), if the debtor has current monthly income, when multiplied by 12, greater than [the State's median income].

11 U.S.C. § 1325(b)(2-3).

In addition to these changes, Congress added a completely new definition to the Bankruptcy Code for the term "current monthly income," which it defined in § 101(10A) as the average of all income received by the debtor in the six months preceding the bankruptcy petition, less certain enumerated exceptions.

When Congress makes stylistic amendments to a statute, those amendments are not intended to alter existing case law interpreting the statute. *E.g.*, *Cohen v. De La Cruz*, 523 U.S. 213, 221 (1998) (stating that when Congress made "stylistic changes" to 11 U.S.C. § 523(a)(2)(A), it would not read the amended statute to "erode past bankruptcy practice" because there was no "clear indication that Congress intended such a departure."). The changes rendered to § 1325(b)(2), and the enactment of §§ 101(10A) and 1325(b)(3) are plainly more than stylistic. When substantive changes to a statute are made, courts are to presume that Congress "intends its amendment to have a real and substantial effect." *Stone v. INS*, 514 U.S. 386, 397 (1995). When Congress enacts a new statute – such as subsections 101(10A) and 1325(b)(3) – "it is presumed that the legislature intended to change existing law." 73 Am. Jur. 2d *Statutes* § 65 (2007). In construing the new provisions, courts should endeavor give the statute a construction that defeats "evasions employed to continue the mischief sought to be remedied by the statute." *Id.* at § 167. The mischief sought to be remedied was articulated by President Bush on April 20, 2005, when he signed BAPCPA into law:

> In recent years, too many people have abused the bankruptcy laws. They've walked away from debts even when they had the ability to repay them... . The bill I sign today helps address this problem. Under the new law, Americans who have the ability to pay will be required to pay back at least a portion of their debts.

Press Release, White House Press Office, *President Signs Bankruptcy Abuse Prevention, Consumer Protection Act* (Apr. 20, 2005), available at http://www.whitehouse.gov/news/releases/2005/04/20050420-5.html.

Thus, an essential purpose of BAPCPA was to eliminate the type of judicial discretion that allowed

11

"too many people" who were perceived abusers of the bankruptcy system to "walk away from their debts even when they had the ability to repay them." In Chapter 7, this was done with the enactment of means testing in § 707(b)(2), and in Chapter 13, this was done by importing means testing concepts into § 1325(b). Judicial discretion was thereby intended to be largely eliminated in favor of more uniform standards. *E.g.*, Rafael I. Pardo, *Eliminating the Judicial Function in Consumer Bankruptcy*, 81 Am. Bankr. L.J. 471, 472-73 (2007) ("The means test evinces a deep mistrust of the pre-BAPCPA discretion that had been exercised by the bankruptcy judiciary in its gatekeeper role under the substantial abuse dismissal regime . . . ."); Hon. Keith M. Lundin, *Ten Principles of BAPCPA: Not What Was Advertised*, 24-7 A.B.I.J. 1, 69 (Sept. 2005) ("BAPCPA is packed with provisions intended to 'reduce the discretion' of bankruptcy judges. The self-proclaimed backbone of BAPCPA – the abuse test in § 707(b) – purports to be a mindless mathematical formula with fill-in-the-blank numbers and presumptions."); Todd Zywicki, *Bankruptcy Criticisms*, National Review Online (March 15, 2005), at www.search.nationalreview.com (stating that under pre-BAPCPA law, "a judge uses his own subjective preferences to determine the debtor's allowed living expenses. The means-testing provision of the bill will bring some rationality to the system.").

Unfortunately, as this court and many others have observed many times, the result of uniform standards to individual cases often produces unwise results. The duty of the courts, however, is "to interpret a statute as they find it, without reference to whether its provisions are wise or unwise, necessary or unnecessary, appropriate or inappropriate, or well or ill conceived." 73 Am. Jur. 2d *Statutes* § 173 (2007). It is only the case where the effect of the statute would produce an absurd result that a court may justify a deviation from the statutory language. *E.g.*, *United States v. X-Citement Video*, 513 U.S. 64, 69 (refusing to assume that Congress, in passing laws, intended results that are absurd).

In enacting a definition of "current monthly income" that encompasses the average monthly income of the debtor in the six months preceding the filing of the bankruptcy petition, Congress apparently meant to take into consideration temporary income variations. For example, a seasonal worker may have a high income in the summer and fall of the year, but little or no income in the winter months. Taking the previous six months of earnings into consideration may provide for a more realistic picture of that debtor's income. In this case, the Debtor also experienced significant variations in her income in the six months preceding

her bankruptcy petition. She only worked for one of the six months preceding her bankruptcy petition due to medical reasons. While the application of the "current monthly income" formula may be unwise with respect to the Debtor, the court cannot say that the application of the formula is absurd inasmuch as it uses a debtor's past behavior to predict future events. In casting its net of uniform standards, Congress made the disposable income test mandatory – it is neither a floor nor a ceiling – and it therefore must have expected that some debtors with historically low monthly incomes would be advantaged by the implemented system. Indeed, application of the uniform standards in this case may fulfill Congress's apparent purpose. In her Amended Schedule I, the Debtor already claimed some reduction in her monthly wages, and future events may well require the Debtor to take more time off work for medical reasons. Moreover, the plan proposed by the Debtor is likely to be feasible pursuant to 11 U.S.C. § 1325(a)(6), so the results of this case are not absurd inasmuch as the Debtor is not prevented from confirming a Chapter 13 plan based on feasibility.[3]

### III. CONCLUSION

For the above stated reasons, the court will sustain the Trustee's objection to confirmation of the Debtor's plan on the basis that the Debtor's monthly receipt of VA benefits, although exempt under federal and State law, are income to the Debtor for purposes of applying the disposable income test of § 1325(b). The court, however, will overrule the Trustee's objection to confirmation of the Debtor's Chapter 13 plan to the extent that the Trustee seeks to impose a higher monthly plan payment than the $555 proposed by the Debtor because the proposed plan payment is sufficient to repay the Debtor's unsecured creditors 25% of their filed claims, whereas under Form B22C the Debtor cannot be required to repay her unsecured creditors more than 0% of their filed claims.

---

[3] Because the Debtor's plan as proposed is feasible and the court finds that making Chapter 13 plan payments in an amount mandated by Congress is not absurd, the Court has no basis in this case to address whether the result of following Form B22C ever could be so absurd that it cannot be followed. *See, e.g.*, 11 U.S.C. § 1325(a)(6) (requiring as a condition to confirmation that the debtor be able to make all payments under the plan); *In re Edmondson*, 363 B.R. 212, 218-18 (Bankr. D.N.M. 2007) (declining to follow Form B22C when doing so would produce absurd results, as for example, when a debtor lost a job shortly before filing).